STATE OF MAINE
CUMBERLAND, ss

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. CV-16-371

JILLIAN ANGELILLO,

Plaintiff

v.

IDEXX LABORATORIES, INC.,

Defendant

ORDER

STATE OF MAINE
Cumberland, ss, Clerk's Office

MAR 2ⱼ 2018
2:16 PM
RECEIVED

In this case plaintiff Jillian Angelillo has asserted employment discrimination claims against defendant Idexx Laboratories Inc. Angelillo alleges that she was an otherwise qualified employee with a disability and that Idexx failed to provide her with a reasonable accommodation (Complaint Count I), that Idexx discriminated against her based on her disability (Count II), and that Idexx retaliated against her for asserting a claim of discrimination on the basis of disability (Count III).

Before the court is a motion for summary judgment by Idexx.

There is no dispute that Angelillo began working at Idexx as an Administrative Assistant III in the corporate finance department in April 2015. For purposes of summary judgment, Idexx does not dispute that Angelillo was a qualified individual with a disability for purposes of the Maine Human Rights Act (MHRA). Specifically, Angelillo has a social anxiety disorder which has impacted her life since childhood. This became known to Idexx on August 27, 2015 and led to what Angelillo contends were inadequate efforts by Idexx to provide her with reasonable accommodations and what she alleges were discriminatory actions by her supervisor and other Idexx personnel.

Angelillo accepted a job with another employer on October 26, 2015 and advised Idexx that she had resigned two days later. She filed a charge of employment discrimination with the Maine Human Rights Commission on December 15, 2015.

For the reasons set forth below, the court concludes that, considering the summary judgment record in the light most favorable to Angelillo, she has failed to generate a disputed issue for trial on her claim that she was constructively discharged, which precludes recovery of a back pay or front pay remedy.[1] The court also concludes that the undisputed facts demonstrate that Angelillo's complaint to the Maine Human Rights Commission was dismissed based on her failure to cooperate with the Commission's investigation, which precludes recovery of attorney's fees, civil penal damages, compensatory damages for emotional distress, and punitive damages.

## Summary Judgment

Summary judgment should be granted if there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. In considering a motion for summary judgment, the court is required to consider only the portions of the record referred to and the material facts set forth in the parties' Rule 56(h) statements. *E.g., Johnson v. McNeil*, 2002 ME 99 ¶ 8, 800 A.2d 702. The facts must be considered in the light most favorable to the non-moving party. *Id.* Thus, for purposes of summary judgment, any factual disputes must be resolved against the movant. Nevertheless, when the facts offered by a party in opposition to summary judgment would not, if offered at trial, be sufficient to withstand a motion for judgment as a matter of law, summary judgment should be granted. *Rodrigue v. Rodrigue*, 1997 ME 99 ¶ 8, 694 A.2d 924.

---

[1] In addition, as discussed below, it is not disputed that Angelillo obtained a better-paying job upon leaving Idexx.

2

Legal Framework

Employers may not discriminate against a qualified individual with a disability with respect to hiring, advancement, discharge, and terms and conditions of employment. 5 M.R.S. § 4572(2). A qualified individual with a disability is an individual with a physical or mental disability who, with or without reasonable accommodation, can perform the essential functions of the person's employment position. 5 M.R.S. § 4553(8-D).

Employment discrimination can include not making reasonable accommodations for the known physical or mental limitations of an otherwise qualified employee with a disability unless the employer can demonstrate that the accommodation would impose an undue hardship on the operation of the business. 5 M.R.S. § 4553(2)(E).[2] Reasonable accommodations may include but are not limited to job restructuring or modified work schedules. 5 M.R.S. § 4553(9-A)(B).

Employers also may not discriminate against an employee because the employee has opposed a discriminatory practice or because the employee has made a charge under the MHRA. 5 M.R.S. § 4572(1)(E) (generally referred to as the anti-retaliation provision).

Remedies available for unlawful discrimination under the MHRA include back pay and front pay to the extent that discrimination has resulted in lost income, injunctive relief in the form of orders to cease and desist, reinstatement in employment, civil penal damages, and attorney's fees. 5 M.R.S. §§ 4613(2)(B)(1), 4613(2)(B)(2), 4613(2)(B)(7), 4614. In the case of intentional discrimination, remedies may include punitive and compensatory damages, including compensatory damages for emotional distress and inconvenience. 5 M.R.S. §§ 4613(2)(B)(8)(a) and (d). However, attorney's fees, civil penal damages, compensatory damages, and punitive

---

[2] The MHRA separately provides that damages may not be awarded for failure to provide a reasonable accommodation if the employer makes good faith efforts in consultation with the individual in question to identify a reasonable accommodation that would not cause an undue hardship on the operation of the business. 5 M.R.S. § 4613(2)(B)(8)(b).

3

damages may not be awarded unless the complainant has filed a complaint with the Maine Human Rights Commission and followed Commission procedures. 5 M.R.S. § 4622(1).

Relevant Facts

The following facts are taken from the Rule 56(h) statements submitted by the parties and the record citations referred to. Idexx's Statement of Material Facts dated October 11, 2017 will be cited as "Idexx SMF." Angelillo filed a Response to Defendant's Statement of Material Facts and a separate Statement of Material Facts, both dated November 8, 2017. The latter document will be cited as "Angelillo SAMF."

For purposes of summary judgment, the court accepts the factual assertions that Angelillo has admitted and accepts Angelillo's version of any disputed facts to the extent that her factual assertions are supported by evidence in the summary judgment record.[3]

A significant part of Angelillo's job as an Administrative Assistant II involved planning and coordinating meetings, lunches, and other functions and special events. Idexx SMF ¶ 4 (admitted). Angelillo did this on various occasions without incident[4] until August 27, 2015 – four months after she was hired – when she was working at a summer outing that included an afternoon cruise in Portland Harbor. Angelillo began to experience anxiety about going on the

---

[3] In this case the parties have not made it particularly easy to determine the extent to which there are genuine issues of material fact. Idexx's 119-paragraph statement of material facts, Angelillo's response to that statement, Angelillo's 105-paragraph statement of additional material facts, and Idexx's reply statement of material facts add up to a total of 93 pages. These include a number of factual assertions that the parties correctly acknowledge are undisputed and a number of factual assertions that are legitimately disputed, but they also include a substantial amount of quibbling on both sides.

[4] *See* Angelillo Ex. 15 (October 12, 2015 email from Angelillo to Holliday), cited in Angelillo SAMF ¶ 52. Both parties have cited to emails in their statements of material facts. Although in some cases hearsay objections to the emails could have been made, no such objections were made by either party, and the court will consider the emails.

4

cruise, a situation in which she felt she would be trapped. She informed the Idexx employee in charge of the summer outing of her anxiety, and he gave her permission to leave. This was the first time that Angelillo had informed anybody at Idexx of her social anxiety disorder. Angelillo SAMF ¶¶ 7-13.

On September 3, 2015 Angelillo's supervisor, Bonnie Reid, learned that Angelillo had left the summer outing and gone home. Angelillo informed Reid of her social anxiety disorder. Reid told Angelillo that she should have returned to work or used paid time off (PTO) and that she should also return to work or use PTO if she was unable to attend a function in the future. Idexx SMF ¶¶ 20-21, 23, 25 (admitted). There was apparently some discussion as to whether Angelillo should have been paid for time on August 27 when she had not worked, and Angelillo contacted Laura Gormley at Idexx Human Resources about that issue. She stated that she had extreme social anxiety and complained that she was being penalized for something that was beyond her control. Angelillo SAMF ¶ 15. Angelillo's pay ultimately was not docked and she was not disciplined. Idexx SMF ¶¶ 8, 28 (admitted).

On September 9, 2015 Reid and Angelillo had a further discussion about Angelillo's social anxiety, and Reid questioned whether this would affect Angelillo's ability to work at other large events. Angelillo responded that for large work events, rather than social events, this would not be a problem. Angelillo SAMF ¶¶ 17-19.

On September 10, 2015 Gormley responded to Angelillo and told her to contact UNUM to start the process of exploring reasonable accommodations for any medical condition that affected Angelillo's work. Angelillo SAMF ¶ 22.[5] Angelillo advised Gormley on September 21 that she had experienced difficulty reaching an appropriate person at Unum, and Gormley then contacted

---

[5] At that time UNUM was Idexx's third party medical accommodations administrator. Idexx SMF ¶ 34 (admitted).

Kelsy Holliday at UNUM, who opened a file the same day. Gormley Ex. 3, cited in Angelillo SAMF ¶ 31; Idexx SMF ¶ 37. On September 21 Angelillo also forwarded to Gormley a note from Susan Martin, a psychiatric mental health nurse practitioner (PMHNP) treating Angelillo. In that note, Martin requested that Idexx excuse Angelillo from large social events until she received therapeutic benefit from her psychotropic medication. Gormley Ex. 4, cited in Angelillo SAMF ¶ 34.

This led to requests by Unum for further information from Martin. Idexx SMF ¶¶ 38-39 (admitted). As of October 1, Holliday emailed Gormley to inform her that Angelillo's health care provider had repeated the request that Angelillo not be required to attend large social functions and added several additional suggestions: (1) that Angelillo be given flexible scheduling for medical appointments, (2) that Angelillo have weekly meetings with her supervisor to review her performance and to determine agreed-upon accommodations; and (3) to arrange Angelillo's work at large meetings so that she could take short breaks away from the group. Gormley Ex. 6, cited in Angelillo SAMF ¶¶ 42-45. Holliday stated that it was likely that Angelillo qualified for workplace assistance and concluded, "Please review her request and determine if this is a reasonable accommodation." *Id.*

In a conversation with Holliday on October 12, Angelillo stated that her problem was with events that were purely social, that it was not the size of the event that triggered her anxiety, and that she was okay at work functions if she had tasks to do and could excuse herself from social interactions. Idexx SMF ¶ 45 (admitted).

The record also includes a note of a further conversation with Nurse Practitioner Martin on October 14. Angelillo Ex. 16, cited in Angelillo SAMF ¶¶ 53-54. That document reports that Martin stated that as to large social events, Angelillo simply needed to be allowed to excuse herself

6

to regroup if she felt overwhelmed. The note reports that Angelillo had stated that purely social events created the biggest issue and that Martin stated that the summer boat trip was likely a one-time event, particularly stressful because Angelillo could not leave the boat. The note also reports that Martin had reiterated her suggestion that Angelillo meet with her supervisor perhaps monthly to discuss upcoming events and to allow Angelillo to express her concerns.

In the meantime Angelillo had had various interactions with Idexx employees which are summarized below but which she contends evidenced discrimination and retaliation against her. These included a request by Angelillo for clarification from her supervisor, Bonnie Reid, as to attendance requirements for social gatherings. Reid had responded that there were social components in a variety of forums. Reid Ex. 4, cited in Angelillo SAMF ¶¶ 36-37. On September 23 Angelillo sent an email to Reid in which she complained about the lack of clarity in Reid's response. In that email Angelillo stated that she was disappointed by Reid's lack of support as her manager, that she felt her job was in jeopardy, and that she felt shamed and humiliated for struggling with social anxiety. Gormley Ex. 5, cited in Angelillo SAMF ¶ 38.

As set forth in a string of emails during the period from September 29 to October 1,[6] this led to an attempt by Gormley to arrange a meeting to discuss Angelillo's complaints about Reid. Angelillo asked that her health care provider have the ability to call in and be part of that meeting. When Gormley questioned whether that was necessary in a meeting to discuss Angelillo's interactions with Reid, Angelillo responded that wanted to make sure she was not being discriminated against for having social anxiety. Angelillo stated that she believed that Gormley had not been an objective employee advocate and that she felt she was a target for potential retaliation and dismissal for speaking up.

---

[6] The email string in question is marked as Gormley Ex. 7 and cited in Angelillo SAMF ¶¶ 39-41.

7

Ultimately a meeting was set up on October 19 to discuss reasonable accommodations and Angelillo's concerns about Reid. This was consistent with a process established under federal anti-discrimination law that reasonable accommodations be determined in an interactive process between employee and employer. *See EEOC v. Kohl's Department Stores Inc.,* 774 F.3d 127, 132 (1st Cir. 2014).[7]

In an email exchange in advance of the October 19 meeting, Angelillo Ex. 19, cited in Angelillo SAMF ¶¶ 55-56, Susan Hurst, a Senior Employee Relations Specialist at Idexx, sent a list of questions to Angelillo to solicit her thoughts. To the question of what restrictions she thought she had, Angelillo responded that the only restriction had been placed on her by her manager who had questioned her ability to perform the job which Angelillo found to be insensitive and discriminatory. Angelillo noted that reasonable accommodation recommendations had been sent to UNUM and Idexx by her health care provider. Angelillo stated that she agreed that a cordial meet and greet and polite small talk and attentiveness to employee needs at business meetings was part of her job. She did not consider socializing at a social event to be part of her job. She added that the issues needing clarification were management communication, sensitivity to medical conditions, changing management expectation, and micro-management.[8]

The attendees at the October 19 meeting were Angelillo, Hurst, Gormley, and Reid. Holliday participated by phone. Idexx SAMF ¶ 48 (admitted). There is a dispute as to certain of

---

[7] An employer is not obligated to provide an employee with the accommodation she requests so long as some reasonable accommodation is provided. *Mobley v. Allstate Insurance Co.,* 531 F.3d 539, 546 (7th Cir. 2008).

[8] Angelillo also met with Hurst prior to the meeting and testified that she thought Hurst was trying to be helpful and listened to her. Idexx SMF ¶ 49 (admitted). However, based on their conversation Angelillo believed that Hurst was also advising her that she needed to get in line and listen to her manager. Angelillo SAMF ¶ 59.

8

the events of the meeting, but the court will accept Angelillo's version for purposes of summary judgment.

The issue of medical appointments was discussed, and the Idexx representatives asked if Angelillo could attend her medical appointments outside of working hours. Angelillo said that was not possible and objected that she was made to feel guilty by her manager when she took time for medical appointments. Angelillo Ex. 23, cited in Angelillo SAMF ¶ 79 (October 26 email from Angelillo to Hurst).[9]

Angelillo's medical provider had suggested that Angelillo hold weekly or monthly meetings with her supervisor to discuss the need for accommodations with respect to upcoming events. At the meeting Idexx representatives told her she should not expect a continuing time commitment of this nature but they agreed to weekly meetings for a one-month trial period. Angelillo Ex. 23, cited in Angelillo SAMF ¶ 78 (October 26 email from Angelillo to Hurst).

The major bone of contention at the meeting was whether Angelillo should be excused from what she regarded as purely social events such as the summer outing and the Christmas party. Work at such events was not expressly mentioned in Angelillo's job description. Reid Dep. 8-9, cited in Angelillo SAMF ¶ 64. However, the Idexx representatives stated that although an event might be considered to be social, these were team-building events and were therefore work related.[10] Accordingly, the Idexx representatives stated that they would decline to allow Angelillo

---

[9] In Angelillo's opposition to summary judgment, Idexx's inquiry as to whether Angelillo could attend medical appointments outside of working hours is characterized as "Idexx told plaintiff to make her appointments outside of business hours." Plaintiff's Opposition to Motion for Summary Judgment at 15 (emphasis added). That contention is not supported by Angelillo Ex. 23. In addition, Angelillo has admitted that she was never told she could not go to a medical appointment and that all her requests to go to medical appointments were approved. Idexx SMF ¶ 11 (admitted).

[10] Idexx's position appears to have been that although an event might have been social in nature for the attendees, it was part of Angelillo's work to be present to follow up on pre-meeting arrangements and to make sure the event ran smoothly. However, that does not answer the question whether, as a reasonable

9

to be excused from the events that she characterized as purely social. Angelillo SAMF ¶¶ 68-69. At that time they did not determine whether the accommodation that Angelillo was requesting would cause an undue hardship. Angelillo SAMF ¶ 71.

To the extent that the Idexx representatives suggested that there might be flexibility on a case by case basis, they expected that this should be worked out between Angelillo and Reid – the manager who, according to Angelillo, was engaging in discrimination and retaliation against her. Angelillo SAMF ¶ 72. The Idexx representatives also told Angelillo that she could not necessarily expect to have an event planner or other colleague available for assistance at every event she was working. Angelillo requested that she at least have someone available to walk around with her at certain meetings and was told this would not be possible. Angelillo SAMF ¶¶ 73-77.[11]

On October 22 Angelillo requested a written summary of the meeting. Idexx SMF ¶ 79 (admitted). This was provided to Angelillo by email on October 26 at 2:38 pm. Idexx SMF ¶ 80 (admitted). Earlier that same day Angelillo, who had been looking for a new job since at least October 13, had accepted employment with Spectrum. Idexx SMF ¶¶ 87-88 (admitted).

Notwithstanding her acceptance of other employment, Angelillo sent an email to Hurst on October 26, minutes after receiving Hurst's email enclosing the meeting notes, in which Angelillo stated that she was formally requesting a response for the undue hardship that her accommodation request would cause. In that email (included in Angelillo Ex. 23) Angelillo stated her criticisms of Idexx's responses to her complaints and stated, "My accommodation request was to ensure that I had at least one person with whom I could walk around with" in order not to feel alone at

---

accommodation, Angelillo's job could have been restructured to allow her to miss the social events that triggered her social anxiety.

[11] This is one of the primary point of disagreement as to the October 19 meeting. The Idexx representatives have presented affidavits stating that they do not recall that request.

10

social/teambuilding events. Idexx SMF ¶ 81. She stated that she perceived Idexx's statements that she would have to work alone at some events as a change in her job that resulted in further obstacles rather than reasonable accommodations. She stated her understanding that Idexx was being discriminatory and unwilling to reasonably accommodate her medical condition. Angelillo Ex. 23, cited by Angelillo in response to Idexx SMF ¶ 81.

When Hurst responded the following day that she had not understood that Angelillo had requested an accommodation of having someone walk around with her, Angelillo responded somewhat ambiguously that while she could appreciate that Hurst may not have understood her request, she knew that her request had been heard because the response was not to expect assistance. October 27 email from Angelillo to Hurst included in Angelillo Ex. 23, cited in Idexx SMF ¶¶ 84-85 (admitted).[12] Angelillo stated that it was her understanding that although assistance at large meetings was available to other Idexx assistants, she had been told not to rely on others, adding

> My question to you is if my understanding is correct? Is it an undue hardship for Idexx to ensure that I have someone available for support during the **Summer Outing** (80+ attendees), **Christmas Party** (80+ attendees) and **Global Finance Meeting** (120 +attendees) and if so please provide the reason why.

*Id.* (boldface in original). In her deposition Angelillo testified that at that point she was seeking clarification because she was unclear whether Idexx was willing to provide another employee to work with her during social events as she had requested. Angelillo Dep. 248, cited in Idexx SMF ¶ 86.

---

[12] Angelillo also stated in the October 27 email included in Angelillo Ex. 23 that the meeting had ended abruptly without time for her questions or comments, although she acknowledged in her deposition that she had spoken up and shared her views during the meeting. Angelillo Dep. 105, cited in Idexx SMF ¶ 50.

On October 28, two days after she had accepted a job with Spectrum, Angelillo notified Idexx by email that she was resigning effective immediately. She stated that her manager's behavior and Idexx's failure to provide a reasonable accommodation constituted discrimination. She also stated that she had formally complained about the way Gormley had handled her complaint, that nothing had been done, that she had been left with no other choice but to submit her resignation. Angelillo Ex. 7, cited in Angelillo SAMF ¶ 96.

In the addition to her contention that Idexx had failed to provide reasonable accommodations, Angelillo's claims of discrimination and retaliation and her claim that she had been constructively discharged are based on the following:

- that Angelillo had been subjected to micromanagement by Bonnie Reid. Angelillo SAMF ¶ 101. Angelillo acknowledged that she had been frustrated by Reid's micromanagement even before she had told Idexx about her social anxiety but testified the micromanagement got worse after she had disclosed her condition. Angelillo Dep. 262-63, cited in Angelillo response to Idexx SMF ¶ 107.

- that Reid had made it tense and stressful for Angelillo to attend medical appointments. Angelillo SAMF ¶ 91. However, Angelillo acknowledged that this had predated Reid's knowledge of her disability. Angelillo Dep. 261-62.

- that Reid had stopped coming over the Angelillo's desk. Angelillo SAMF ¶ 83. However, Angelillo testified that Reid had stopped coming by her desk in July – prior to the summer outing at which Idexx had first been notified that Angelillo had social anxiety. Angelillo Dep. 70-71, cited in Idexx response to Angelillo SAMF ¶ 83.

- that Reid started to question Angelillo's ability to do her job after the summer outing. Angelillo SAMF ¶ 84.

- that after the summer outing Reid started requiring Angelillo to document her lunch breaks and get permission to skip lunch even when Angelillo had been working during the lunch hour, purportedly to comply with overtime requirements but allegedly in retaliation for Angelillo's complaints. Angelillo SAMF ¶¶ 82, 85-86.

- that Idexx had expected Reid to determine any case by case requests for flexible scheduling even though Angelillo had complained that Reid was discriminating and retaliating against her. Angelillo SAMF ¶ 93.

12

• that Gormley had told her, in connection with the summer outing, that persons who abandon their jobs could be terminated, which Angelillo interpreted as a threat. Angelillo SAMF ¶¶ 26, 102-03. As of October 13, Angelillo had believed that Reid was seeking to fire her. Angelillo Dep. 97.

• that Gormley had told Angelillo that in the past employees left the company because accommodations could not be made for them. Angelillo SAMF ¶ 104, citing Angelillo Dep. 97.

• that Idexx had responded inadequately to Angelillo's various complaints of discrimination. Angelillo SAMF ¶¶ 96-98.

Considered in isolation, Angelillo's claim that Idexx discriminated against her by failing to provide her with a reasonable accommodation would present a disputed issue of fact.[13] However, Angelillo is not seeking injunctive relief in the form of an order requiring Idexx to provide the necessary accommodation or an order that Idexx cease and desist from discriminating or retaliating against her. She is instead seeking damages based on the claim that she was subjected to a constructive discharge and on the claim that Idexx's actions entitle her to civil penal damages, punitive damages, and compensatory damages for emotional distress.

Constructive Discharge

An individual claiming employment discrimination can be found to have been subjected to adverse employment action if she can show that she was constructively discharged – that she had

---

[13] The court does not need to decide whether, apart from any failure to provide Angelillo with a reasonable accommodation, Angelillo has offered evidence sufficient to create disputed facts for trial on her discrimination and retaliation claims. First, her discrimination and retaliation claims do not stand alone but are aspects of her claim that Idexx failed to provide a reasonable accommodation. Second, while a failure to provide a reasonable accommodation is itself sufficient to constitute discrimination, 5 M.R.S. § 4553(2)(E), Angelillo's other claims would require that she demonstrate that she has been subjected to an adverse employment action. In this case, considering the summary judgment record in the light most favorable to plaintiff, Angelillo had reason to be displeased and frustrated by Idexx's response to her social anxiety disorder but she was not subjected to any adverse employment action except for what she characterizes as a constructive discharge. *See LePage v. Bath Iron Works Corp.* 2006 ME 130 ¶ 20, 909 A.2d 629, *quoting Blackie v. State of Maine,* 75 F.3d 716, 725 (1st Cir. 1996) (adverse actions involve tangible deprivations such as demotion, pay reduction, termination, or denial of promotion).

no alternative except to resign. *Sullivan v. St. Joseph's Rehabilitation and Residence*, 2016 ME 107 ¶ 15, 143 A,3d 1283. To prevail on such a claim the employee must demonstrate that her "working conditions were so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign." *Sullivan v. St. Joseph's Rehabilitation and Residence*, 2016 ME 107 ¶ 15, quoting *Lee-Crespo v. Schering-Plough Del Caribe, Inc.*, 354 F.3d 34, 45 (1st Cir. 2003).

This is an objective standard, and "an employee's subjective perceptions do not govern." 2016 ME 107 ¶ 21, quoting *Lee-Crespo*, 354 F.3d at 45. For a resignation to constitute a constructive discharge, it must be "void of choice or free will – the only option was to quit." *Id.*, quoting *EEOC v. Kohl's Department Stores, Inc.*, 774 F.3d 127, 134 (1st Cir. 2014).

In *Sullivan*, a claim brought under the Maine Whistleblowers' Protection Act, the Law Court concluded that summary judgment had properly been granted on Sullivan's claim of constructive discharge even though Sullivan had offered evidence that (1) as the director of nursing, she had received emails from the facility's admissions director telling her how to do her job, (2) she had been subjected to bullying behavior, (3) she had received excessively critical comments on her skills and job performance that were communicated in a harsh and rude manner, (4) she had been excluded from meetings and from decision-making processes, (5) she had been relieved of certain responsibilities, (6) she had been accused of being "not on board" with changes that were being undertaken, and (7) she had been placed on a 30-day performance plan and told she could be terminated if progress was not achieved within 30 days. 2016 ME 107 ¶¶ 5-9. One day into her 30-day performance plan, Sullivan had resigned. 2016 ME 10. ¶ 10.

The Law Court noted that Sullivan's pay had never been reduced and that she was not demoted, transferred, or discharged from her employment. 2016 ME 107 ¶ 11. It found that

14

notwithstanding the evidence recited above, Sullivan was not entitled to a trial on her claim that she had been constructively discharged:

> Sullivan did present evidence to show that due to her complaints a regarding St. Joseph's procedures that she felt were illegal and/or unsafe, her supervisors alienated her, criticized her, and issued a negative performance review with a thirty-day performance plan. Accepting Sullivan's representations as true, the workplace may have been a difficult environment for her. The facts alleged, however, do not rise to the level where her only option was to quit. Put another way, the evidence contained in the summary judgment record would not allow a jury to reasonably conclude that the working conditions were so difficult or unpleasant that a reasonable person in Sullivan's shoes would have felt *compelled* to resign.

2016 ME 107 ¶ 22 (emphasis in original). *Accord, Lee-Crespo v. Schering-Plough Del Caribe, Inc.,* 354 F.3d at 45 ("constructive discharge usually refers to harassment so severe and oppressive that staying on the job while seeking redress – the rule save in exceptional cases – is intolerable") (internal quotations omitted).

If a jury could not have reasonably concluded that Sullivan's resignation constituted constructive discharge, the same conclusion follows in Angelillo's case. Angelillo offered evidence that her ability to do her job had been questioned, that her manager had been hostile, that she had not received a satisfactory response to her requests for an accommodation, and that she believed her job was being threatened. Her emails demonstrate that she was frustrated from the outset in connection with attendance at what she saw as purely social events, and she felt that, as she stated, she had no choice but to resign. However, Angelillo's "subjective perceptions do not govern." *Sullivan,* 2016 ME 107 ¶ 21.

Angelillo's pay had not been docked, she had not been relieved of any job responsibilities, and she had not been disciplined. Indeed, Angelillo had offered less evidence of rudeness, bullying, and excessive criticism than Sullivan, and Angelillo's situation was less precarious than that of

15

Sullivan because Angelillo had not been placed on any kind of performance plan or told that she would be terminated if her performance did not improve.

Considered under an objective standard, Angelillo could have stayed on the job while seeking redress. Quitting was not her only option. In this context, it bears emphasis that although Idexx had declined to excuse Angelillo from what she considered to be social functions, Idexx had agreed to a trial period of meetings between Angelillo and her supervisor to address upcoming functions on a case by case basis. Angelillo also acknowledged that at the time she resigned she was seeking clarification of whether Idexx would provide support in the form of another employee to be with her at social events. Thus, even though Angelillo believed that the outcome would not be satisfactory, no final answer had been reached on her request for a reasonable accommodation. It also bears emphasis that from the October 19 meeting to Angelillo's resignation nine days later, she was not required to work at or attend any large function and she had not notified Idexx that there were any imminent events that she had concerns about. Idexx SMF ¶ 90 (admitted).

Accordingly, Idexx is entitled to summary judgment on any claims that are dependent on constructive discharge.

In addition, to the extent that Angelillo might be seeking damages in the form of an award of either back pay or front pay, the Law Court has held that any such award must be reduced by actual earnings on another job during the pertinent period. *Walsh v. Town of Millinocket*, 2011 ME 99 ¶¶ 34, 42, 28 A.3d 610. In this case it is undisputed that Angelillo obtained a better-paying job at Spectrum. Idexx SMF ¶¶ 2, 92 (admitted). As a result, even if Angelillo's resignation could be found to have constituted a constructive discharge, her remedies would not include monetary damages to make up for any loss in earnings, and Idexx would be entitled to summary judgment on any claim of that nature.

16

## Non-Cooperation with Human Rights Commission Investigation

Even if a plaintiff is not seeking injunctive relief or lost earnings based on termination, other remedies are potentially available under the Human Rights Act. As discussed above, an employee who has been subjected to discrimination can also seek civil penal damages, punitive damages, and compensatory damages for emotional distress and other nonpecuniary damages, as well as attorney's fees. 5 M.R.S. §§ 4613(2)(B)(7), 4613(2)(B)(8)(a), 4614. However, attorney's fees, civil penal damages, compensatory damages, and punitive damages

> may not be awarded to a plaintiff in a civil action under the Act unless the plaintiff alleges and establishes that, prior to the filing of the civil action, the plaintiff first filed a complaint with the [Human Rights Commission] and the commission either:
>
> A. Dismissed the case under section 4612, subsection 2;
>
> B. Failed, within 90 days after finding reasonable grounds to believe that unlawful discrimination has occurred, to enter into a conciliation agreement to which the plaintiff was a party;
>
> C. Issued a right-to sue-letter under section 4612, subsection 6; or
>
> D. Dismissed the case in error.

5 M.R.S. § 4622(1).

In this case it is undisputed that Angelillo filed a discrimination complaint with the Human Rights Commission on or about December 11, 2015 and that on the Executive Director of the Commission sent a March 15, 2016 letter to Angelillo's counsel (with a copy to Angelillo) forwarding Idexx's response to the complaint and instructing Angelillo to provide a reply within 60 days. Idexx SMF ¶¶ 111, 113 (admitted). The Executive Director's March 15, 2016 letter also stated:

17

**If your client does not submit a Reply, or provide information that tends to disprove what the Respondent has said, I may administratively dismiss the case for failure to substantiate the complaint or failure to cooperate with our investigation.**

Exhibit 2 to Bowers Affidavit (boldface in original), cited in Idexx SMF ¶ 113 (admitted).

When Angelillo did not submit a reply within 60 days, the Executive Director sent a letter dated May 24, 2016 to Angelillo by certified mail stating that no information had been received. The letter stated that the Executive Director had the authority under Commission regulations to dismiss a case for failure to cooperate, citing 94-348 C.M.R. Ch. 2, § 2.02(H). The letter further stated that if no reply was received by June 23, 2016, "I will dismiss your case for failure to cooperate." Exhibit 3 to Bowers Affidavit, cited in Idexx SMF ¶ 114.[14]

Angelillo received the May 24 certified letter on June 6, 2016 and did not submit a reply or otherwise respond by June 23. Idexx SMF ¶¶ 115-16 (admitted).

On July 1, 2016 the Executive Director of the Commission sent a letter to Angelillo with a copy to her attorney[15] stating that Angelillo had been warned in the preceding letter that if no reply was received by June 23, the case would be dismissed for failure to cooperate with the Commission investigation. The letter further stated that because no reply had been received, "this complaint is administratively dismissed pursuant to Title 5 Maine Revised Statutes § 4612(2) and 94-348 Code of Maine Regulations Ch. 2, § 2.02(H)(4)." Exhibit 5 to Bowers Affidavit (underlining in original), cited in Idexx SMF ¶ 117 (admitted).

Angelillo argues that because the Executive Director's letter cites § 4612(2), this case qualifies as a dismissal under § 4622(1)(A) and she is therefore allowed to seek civil penal

---

[14] The May 24, 2016 certified letter shows a cc to Angelillo's counsel. In her response to Idexx SMF ¶ 114, Angelillo denies that a copy of the May 26 letter was in fact sent Angelillo's counsel but does not deny the contents of the letter or that the letter was sent to Angelillo.

[15] Angelillo does not deny that a copy of the July 1 letter was sent to her counsel.

18

damages, compensatory damages, punitive damages and attorney's fees. However, Section 4612(2) applies when "the commission does not find reasonable grounds to believe that unlawful discrimination has occurred." In this case the commission made no such finding. Instead, the Executive Director – not the Commission – dismissed Angelillo's case for failure to cooperate with the investigation pursuant to 94-348 C.M.R. Ch. 2, § 2.02(H)(4), which specifically addresses administrative dismissal of complaints for failure to cooperate.

The intent of section 4622(1) is to require complainants to pursue their remedies before the Human Rights Commission before they can recover compensatory damages, punitive damages and attorney's fees. When a complainant has failed to cooperate and pursue her claim before the Commission, it follows that section 4622(1) precludes those remedies.

Accordingly, Angelillo's entitlement to civil penal damages, compensatory damages, punitive damages, and attorney's fees is barred under 5 M.R.S. § 4622(1), and Idexx is therefore entitled to summary judgment dismissing the complaint.

The entry shall be:

The motion by defendant Idexx Laboratories Inc. for summary judgment dismissing the complaint is granted. The clerk shall incorporate this order in the docket by reference pursuant to Rule 79(a).

Dated: March **29**, 2018

_____
Thomas D. Warren
Justice, Superior Court

19